UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

IN RE PAYMENT CARD INTERCHANGE FEE
AND MERCHANT DISCOUNT ANTITRUST
LITIGATION

Case No. 14-MD-01720 (MB) (JO)

---

This Document Applies To:

WAL-MART STORES, INC., WAL-MART
STORES TEXAS, LLC, WAL-MART STORES
EAST, LP, WAL-MART STORES EAST, LLC,
WAL-MART LOUISIANA, LLC, WAL-MART
STORES ARKANSAS, LLC, SAM'S WEST,
INC., SAM'S EAST, INC., WAL-MART.COM
USA, LLC, VUDU, INC., INKIRU,
INC., OZARK SPIRITS, LLC, GREEN RIVER
SPIRITS, LLC, and QUALITY LICENSING
CORP.,

Case No. 14-CV-02318 (MB) (JO)

              Plaintiffs,

          v.

VISA U.S.A. INC., VISA INC., VISA
INTERNATIONAL SERVICE ASSOCIATION,
VISA EUROPE LIMITED, and VISA EUROPE
SERVICES INC.,

             Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS VISA EUROPE LIMITED'S AND VISA EUROPE SERVICES INC.'S
## MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

James R. Warnot, Jr.
Elizabeth M. Dowd
Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
(212) 903-9000 Telephone
(212) 903-9100 Facsimile
james.warnot@linklaters.com
elizabeth.dowd@linklaters.com

*Attorneys for Defendants Visa Europe
Limited and Visa Europe Services Inc.*

December 23, 2014

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND .............................................................................................................. 3

    A.   VEL and VESI ............................................................................................ 3

    B.   Relationship Between Visa Europe And Other Defendants ....................... 3

    C.   Substantive Allegations Concerning Visa Europe ..................................... 5

    D.   Remaining Substantive Allegations ........................................................... 5

ARGUMENT .................................................................................................................... 6

I.      PLAINTIFFS FAIL TO STATE A CLAIM AGAINST VISA EUROPE ........................... 6

    A.   Plaintiffs Fail to Plead Facts That Plausibly Show Visa Europe Participated In The Alleged Misconduct ........................................................................... 6

    B.   Plaintiffs' Group Pleading Allegations Are Facially Deficient .................. 9

    C.   Plaintiffs' Section 2 Claims Should Be Dismissed For Failure to Plead Visa Europe's U.S. Market Power ...................................................................... 11

II.    VEL IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT ................. 12

    A.   VEL, A U.K. Corporation With Its Principal Place Of Business In The U.K., Is Not Subject To New York's General Jurisdiction ................................... 13

    B.   Plaintiffs Provide No Basis To Exercise Specific Jurisdiction Over VEL ... 15

    C.   Exercising Jurisdiction Over VEL Would Violate Due Process ................ 18

III.   PLAINTIFFS' ALLEGATIONS DO NOT MEET THE REQUIREMENTS OF THE FTAIA ......................................................................................................... 20

    A.   The "Import Commerce" Exception Does Not Apply ............................... 21

    B.   The "Domestic Effects" Exception Does Not Apply ................................ 21

IV.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ........ 24

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

### CASES

A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines,
    828 F. Supp. 2d 557 (E.D.N.Y. 2011) ......................................................................15, 16, 18, 19

Arneil v. Ramsey,
    550 F.2d 774 (2d Cir. 1977).................................................................................................24

Arnold Chevrolet LLC v. Tribune Co.,
    418 F. Supp. 2d 172 (E.D.N.Y. 2006) ..................................................................................8

Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.,
    480 U.S. 102 (1987)...........................................................................................................18

Ashcroft v. Iqbal,,
    556 U.S. 662 (2009)...............................................................................................6, 7, 9, 20

Atuahene v. City of Hartford,
    10 F. App'x 33 (2d Cir. 2001) .............................................................................................9

Ball v. Metallurgie Hoboken-Overpelt, S.A.,
    902 F.2d 194 (2d Cir. 1990)...............................................................................................13

Barrett v. Tema Dev. (1988), Inc.,
    463 F. Supp. 2d 423 (S.D.N.Y. 2006), aff'd, 251 F. App'x 698 (2d Cir. 2007)...........................4

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)...................................................................................................6, 9, 20

Bernstein v. Wysoki,
    907 N.Y.S.2d 49 (App. Div. 2010) ....................................................................................17

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)...........................................................................................................19

Chambers v. Weinstein,
    No. 157781/2013, 2014 WL 4276910 (N.Y. Sup. Ct. Aug. 22, 2014) ........................................14

Cortec Indus., v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991).............................................................................................3, 7

Daimler A.G. v. Bauman,
    134 S. Ct. 746 (2014)............................................................................................12, 13, 14, 18

Deutsche Zentral-Genossenschaftsbank A.G. v. UBS A.G.,
    No. 652575/2012, 2014 WL 1495632 (N.Y. Sup. Apr. 17, 2014) ...............................................14

Ehrenfeld v. Bin Mahfouz,
    9 N.Y.3d 501 (2007) .................................................................................................................16

In re Elec. Carbon Prods. Antitrust Litig.,
    333 F. Supp. 2d 303 (D. N.J. 2004 ) .........................................................................................10

In re Elevator Antitrust Litig.,
    502 F.3d 47 (2d Cir. 2007) .........................................................................................................6

F. Hoffmann-La Roche Ltd. v. Empagran S.A.,
    542 U.S. 155 (2004) ......................................................................................................20, 21, 23

Ferrante Equip. Co. v. Lasker-Goldman Corp.,
    26 N.Y.2d 280 (1970) ...............................................................................................................16

Freeford Ltd. v. Pendleton,
    857 N.Y.S.2d 62 (App. Div. 2008) ...........................................................................................17

Gmurzynska v. Hutton,
    257 F. Supp. 2d 621 (S.D.N.Y. 2003) .......................................................................................19

Goodyear Dunlop Tires Operations, S.A. v. Brown,
    131 S. Ct. 2846 (2011) ..............................................................................................................13

Gucci Am., Inc. v. Weixing Li,
    768 F.3d 122 (2d Cir. 2014) ......................................................................................................14

H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.,
    672 F. Supp. 724 (E.D.N.Y. 1987), aff'd, 879 F.2d 1005 (2d Cir. 1989).....................................6

H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.,
    879 F.2d 1005 (2d Cir. 1989) ..............................................................................................11, 12

Int'l Shoe Co. v. Washington,
    326 U.S. 310 (1945) ............................................................................................................13, 19

In re Intel Corp. Microprocessor Antitrust Litig.,
    452 F. Supp. 2d 555 (D. Del. 2006) ..........................................................................................22

Jazini v. Nissan Motor Co., Ltd.,
    148 F.3d 181 (2d Cir. 1998) ......................................................................................................12

iii

Jung v. Ass'n of Am. Med. Colls.,
   300 F. Supp. 2d 119 (D.D.C. 2004) ........................................................................8, 10

Kendall v. Visa U.S.A., Inc.,
   518 F.3d 1042 (9th Cir. 2008) ...............................................................................8, 11

Kramer v. Time Warner Inc.,
   937 F.2d 767 (2d Cir. 1991)........................................................................................3

Kruman v. Christie's Int'l PLC,
   284 F.3d 384 (2d Cir. 2002)...............................................................................21, 23

Liaros v. Vaillant,
   No. 93-CV-02370, 1996 WL 88559 (S.D.N.Y. Mar. 1, 1996) ....................................16

Lotes Co., Ltd. v. Hon Hai Precision Industry. Co.,
   753 F.3d 395 (2d Cir. 2014)..............................................................20, 22, 23, 24

McGowan v. Smith,
   52 N.Y.2d 268 (1981) ...............................................................................................16

Metro. Life Ins. Co. v. Robertson-Ceco Corp.,
   84 F.3d 560 (2d Cir. 1996)....................................................................12, 13, 18, 19

Nat'l ATM Council, Inc. v. Visa Inc.,
   922 F. Supp. 2d 73 (D.D.C. 2013) .............................................................................10

Nat'l Bancard Corp. (NaBanco) v. VISA U.S.A., Inc.,
   779 F.2d 592 (11th Cir. 1986) .....................................................................................7

In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.,
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) ....................................................................1, 24

PepsiCo, Inc. v. Coca Cola Co.,,
   315 F.3d 101 (2d Cir. 2002).......................................................................................11

Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc.,
   No. 00-CV-00201 (JSM), 2001 WL 1041990 (S.D.N.Y. Sept. 7, 2001) ....................17

Poodry v. Tonawanda Band of Seneca Indians,
   85 F.3d 874 (2d Cir. 1996)........................................................................................20

Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.,
   No. 08-CV-00042 (JG) (VVP), 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011),
   adopted by No. 08-CV-00042 (JG) (VVP),
   2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012) ...............................8, 10, 11, 20, 21, 24

iv

Roth v. Jennings,
    489 F.3d 499 (2d Cir. 2007).................................................................3

RxUSA Wholesale, Inc. v. Alcon Labs., Inc.,
    661 F. Supp. 2d 218 (E.D.N.Y. 2009),
    aff'd sub nom., 391 F. App'x 59 (2d Cir. 2010).........................................7, 9, 11, 12

Sniado v. Bank Austria A.G.,
    174 F. Supp. 2d 159 (S.D.N.Y. 2001), aff'd, 378 F.3d 210 (2d Cir. 2004)................22

Sonera Holding B.V. v. Çukurova Holding A.S.,
    750 F.3d 221 (2d Cir.), cert. denied, 134 S. Ct. 2888 (June 30, 2014)......................12, 13, 14, 15

Tamam v. Fransabank Sal,
    677 F. Supp. 2d 720 (S.D.N.Y. 2010)......................................................18

Turicentro, S.A. v. Am. Airlines Inc.,
    303 F.3d 293, 305 (3d Cir. 2002)...........................................................24

Virgin Enters. Ltd. v. Virgin Eyes LAC,
    No. 08-CV-08564 (LAP), 2009 WL 3241529 (S.D.N.Y. Sept. 30, 2009) ...................16

In re Visa Check/MasterMoney Antitrust Litig.,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003), aff'd sub nom.,
    Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96 (2d Cir. 2005) ...................1, 24

## STATUTES

15 U.S.C. § 6(a) .........................................................................2, 20, 21

15 U.S.C. § 15b ............................................................................24

Fed. R. Civ. P. 4(k)(1)....................................................................12, 18

N.Y. C.P.L.R. 302(a) .......................................................................15

Defendants Visa Europe Limited ("**VEL**") and Visa Europe Services Inc. ("**VESI**") (together, "**Visa Europe**") respectfully move to dismiss the claims against them in Plaintiffs' Second Amended Complaint and Demand For Jury Trial (the "**SAC**"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

Under a license from Visa Inc., Visa Europe operates a European payment services business that is strictly limited to Europe. Unlike Visa U.S.A. and Visa International Service Association ("**Visa International**"), Visa Europe is not a Visa Inc. affiliate, but rather has been owned and governed by its European member institutions since 2004. Visa Europe's independent status and confinement to its European market have long been open and known and detailed in numerous public records, including Visa Inc.'s 2008 Initial Public Offering ("**I.P.O.**") prospectus, filed with the SEC. Yet only in June 2014—over nine years, 400 depositions, and 80 million document pages after this "extensively litigated" case began[2]—were VEL and VESI first named as defendants in this MDL.

There is a good reason for Visa Europe's prior absence from this litigation: Visa Europe has nothing to do with the matters at issue and does not belong in this case. Indeed, in initially amending their original opt-out complaint to name Visa Europe as defendants, Plaintiffs did not add a single allegation of conduct by Visa Europe. Then, rather than respond to Visa Europe's

---

[1]    While Visa Europe is aware that the Court has denied the Visa Defendants' Motion to Dismiss, see Minute Entry and Order, In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig., No. 14-MD-1720 (JG) (JO) (E.D.N.Y. July 18, 2014), to preserve its appellate rights, Visa Europe asserts the grounds set forth in the Visa Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Wal-Mart Opt-Out Complaint. See Brief for Visa Defendants, Id., (E.D.N.Y. June 26, 2014) (ECF No. 94).

[2]    In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig., 986 F. Supp. 2d 207, 212 (E.D.N.Y. 2013) (ECF No. 6124). Of course, this case and these numbers do not include Wal-Mart's previous extensive litigation against Visa International and Visa U.S.A. See In re Visa Check/MasterMoney Antitrust Litig., 297 F. Supp. 2d 503 (E.D.N.Y. 2003), aff'd sub nom., Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96 (2d Cir. 2005).

motion to dismiss the First Amended Complaint ("**FAC**"),[3] Plaintiffs filed the SAC, which includes a single conclusory allegation of conduct by Visa Europe in its 200-plus paragraphs: that Visa Europe "agreed" to allegedly anti-competitive Interchange Fees set by Visa Inc. <u>See</u> SAC ¶ 39. That core allegation, however, is directly contradicted by the Framework Agreement governing VEL's relationship with Visa Inc., which clearly specifies that Visa Europe only has a role in setting interchange fees for card transactions occurring in *Europe*, not in the rest of the world, including the United States.

This pleading deficiency is further exacerbated by Plaintiffs' continued reliance on group pleading, which asserts allegations and claims against only a general, fabricated "Visa" throughout the SAC. Group pleading is particularly egregious here, where Visa Europe's relationship with the other defendants is one of licensee-licensor rather than of corporate affiliation, and Visa Europe's Motion to Dismiss put Plaintiffs on notice of this defect. Plaintiffs' pleading defects require dismissal of their claims under both Sherman Act Sections 1 and 2, with the latter also defective because Plaintiffs have not and cannot allege that Visa Europe has market power in the relevant market.

In addition, VEL is not subject to personal jurisdiction in this Court. Not only is there no statutory basis for jurisdiction over VEL, but VEL also lacks minimum contacts with the United States as a whole, much less this District. Furthermore, because Plaintiffs have not alleged and cannot allege that Visa Europe engages in or directly affects U.S. commercial activity of any sort, Plaintiffs' attempt to have this Court exercise extraterritorial jurisdiction runs afoul of the Foreign Trade Antitrust Improvements Act (the "**FTAIA**"), 15 U.S.C. § 6(a). Finally, in light of

---

[3]     <u>See</u> Defendants Visa Europe Limited's and Visa Europe Services Inc.'s Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' First Amended Complaint ("**Motion to Dismiss**"), <u>In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.</u>, No. 14-MD-1720 (JG) (JO) (E.D.N.Y. Sept. 5, 2014) (ECF No. 113), No. 14-CV-02318 (JG) (JO) (E.D.N.Y. Sept. 5, 2014) (ECF No. 25).

the fact that Visa Europe was not a defendant in the long-running class action from which Plaintiffs opted out, and because no other tolling doctrines are potentially applicable, all claims arising before June 13, 2010 are time-barred.

Thus, for the reasons explained herein, this Court should dismiss with prejudice all claims against VEL and VESI for failing to state any cognizable claim.[4]

## BACKGROUND

### A.    VEL and VESI

VEL is a private limited liability company incorporated, and with its principal place of business, in the United Kingdom (the "**U.K.**"). SAC ¶ 33. VEL is an association of, and owned by, over 3,000 European banks. Id. Its wholly-owned subsidiary, VESI, is a Delaware corporation with its principal place of business in the U.K. SAC ¶¶ 34, 35.

### B.    Relationship Between Visa Europe And Other Defendants[5]

In 2004, Visa Europe was spun off from Visa International into a U.K. company owned by its European member banks. See S-1 at 177, 44. It remained a Group Member of Visa International from the time of that spin-off until the 2007 Visa global restructuring that created Visa Inc. S-1 at 59. Visa Inc. is a publicly-traded Delaware corporation. SAC ¶ 31. Defendants Visa U.S.A. and Visa International are wholly-owned subsidiaries of Visa Inc. SAC ¶ 32.

After Visa Inc.'s 2007 restructuring and 2008 I.P.O., Visa Europe did not become a Visa Inc. subsidiary, and instead remained owned by its European member financial institutions. S-1

---

[4]    See Cortec Indus., v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").

[5]    Facts in this section include those taken from Visa Inc.'s S-1 Registration Statement, and certain exhibits thereto, in connection with Visa Inc.'s 2008 I.P.O. See Declaration of James R. Warnot, Jr., Exhibit 1, Visa Inc., Registration Statement (Form S-1) (Feb. 25, 2008) ("**S-1**"), and Exhibit 2, Exhibit 10.17 to Form S-1 ("**Framework Agreement**" or "**F.A.**"). The Court may take judicial notice of the contents of public disclosure documents filed with the SEC as containing facts whose accuracy cannot reasonably be questioned. Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir.1991). In addition, on a motion to dismiss, Defendants may use the full text of documents that Plaintiffs rely upon or that were integral to the framing of the complaint. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

at 59; see also SAC ¶ 33. No longer a member of Visa International, Visa Europe retained only a *de minimis* ownership interest in Visa Inc. S-1 at 7, 43-44.[6] Accordingly, Visa Europe has been wholly separate and independent from Visa Inc. and Visa International since 2008.

As a result of the restructuring, Visa Europe's relationship with Visa Inc. became governed by a comprehensive Framework Agreement. S-1 at 43-44. The Framework Agreement has three principal components: a (i) trademark license; (ii) technology license; and (iii) bilateral services agreement. SAC ¶ 46; see generally F.A. Under this agreement, Visa Inc. and Visa Europe provide each other with various services necessary to operate a global payments system, including authorization, clearing, settlement, switching, and processing services. SAC ¶¶ 46-47.

The SAC alleges that: (i) Visa Inc. and Visa Europe share foreign exchange revenues;[7] (ii) the Framework Agreement contains an agreement by Visa Inc. to indemnify Visa Europe for losses resulting from any claims in the United States arising from activities that relate to the payments business of either Visa Inc. or Visa Europe; (iii) the Framework Agreement gives Visa Inc. the ability to control VEL's operations;[8] and (iv) the Framework Agreement contains a New York forum selection clause, although Plaintiffs neglect to mention that this applies only to disputes between Visa Inc. and Visa Europe. SAC ¶¶ 43-47.

---

[6]    Plaintiffs allege that Visa Europe has held, and "on information and belief continues to hold," an approximate 11.7% equity ownership interest in the common stock of Visa Inc. SAC ¶ 48. As part of the reorganization, Visa Europe received an 8.1% ownership interest in Visa Inc. class EU (series I) and EU (series III) common stock, and a 3.6% ownership interest in class EU (series II) common stock. See S-1 at 48-19.  However, Visa Europe's shareholding in Visa Inc. amounts to .07% of Visa Inc.'s issued common stock and is non-voting; all other shares received by Visa Europe in connection with Visa Inc.'s reorganization were sold by the end of 2008.  See Declaration of Hugh Stokes dated December 22, 2014 ("**Stokes Decl.**") ¶ 8; Barrett v. Tema Dev. (1988), Inc., 463 F. Supp. 2d 423, 425 n. 3 (S.D.N.Y. 2006), aff'd, 251 F. App'x 698 (2d Cir. 2007) (In deciding a 12(b)(2) motion, the Court may rely on materials that are outside the pleadings, including any affidavits submitted by the parties).

[7]    Plaintiffs also allege that Visa Europe and Visa Inc. have agreed on "a set of operating rules" that address the calculation of foreign exchange rates. SAC ¶ 42.

[8]    Despite this assertion, there is nothing in the Framework Agreement that either explicitly states or implicitly suggests that Visa Inc. has the ability to control Visa Europe. To the contrary, the Framework Agreement makes clear that the parties to the agreement are independent contractors. F.A. ¶14.

4

The Framework Agreement explicitly limits the transactions for which Visa Europe sets interchange fees to those occurring in Europe, providing in relevant part that:

> [VEL] may set the Default Interchange Rates and the rules for setting such rates in respect of [European] transactions . . . [Visa Inc.] may set the Interchange Rates and the rules for setting such rates in respect of [U.S.] transactions and shall set Interchange Rates and the rules for setting such rates in respect of International Transactions. *[VEL] shall not set Interchange Rates or the rules for setting such rates in respect of VI Transactions or International Transactions.*

F.A. Schedule 1 ¶¶ 33.2, 33.3 (emphasis added).[9]

### C. Substantive Allegations Concerning Visa Europe

The SAC alleges few substantive allegations specific to Visa Europe. Plaintiffs' principal allegation is that Visa Europe "agreed to" anticompetitive Interchange Fees set by Visa Inc. SAC ¶ 39. Plaintiffs further allege that Visa Europe knew that Visa Europe cardholders would make purchases in the United States, causing Interchange Fees to be incurred, and that Visa Europe profited from those fees. SAC ¶¶ 38, 40. Plaintiffs also allege, without a single supporting fact, that Visa Europe was a "direct participant" in the alleged conspiracy, SAC ¶ 39, and that Visa Europe is sued "due to the effects of [its] rules on Interchange Fees charged and paid in the United States." SAC ¶ 36.

### D. Remaining Substantive Allegations

The vast majority of the SAC remains virtually identical to the FAC. Plaintiffs allege an antitrust conspiracy against a purported unitary "Visa" entity—one that in fact groups the five distinct Visa corporate entities named as defendants—and various unnamed banks, which are former owner-members (now customers) of Visa U.S.A. and Visa International. SAC ¶¶ 31-35,

---

[9]     The Framework Agreement defines three types of transactions: (i) "VE Transactions," in which the card issuer is a member of Visa Europe and the transaction occurs within Europe; (ii) "VI Transactions," in which the card issuer offers Visa cards or products under license from Visa Inc. (*i.e.*, is not a member of Visa Europe) and the transaction occurs outside of Europe; and (iii) "International Transactions," in which either the card issuer is a Visa Europe member and the transaction occurs outside Europe, or the card issuer is a customer of Visa Inc. and the transaction occurs within Europe. F.A. Schedule 1 ¶¶ 54, 57-58. It is the third of these categories that Plaintiffs assert as a basis for liability against Visa Europe. SAC ¶ 39.

5

51, 53, 59. Plaintiffs allege that "Visa" and the banks conspired not to compete and to fix prices through "Visa's" "default interchange," "honor all cards," "honor all issuers," and other unspecified rules and anticompetitive conduct. SAC ¶¶ 60-66, 96-99; 140-65. Plaintiffs also allege that "Visa" has engaged in anticompetitive conduct to monopolize the "market for General Purpose Debit Card Network Services Market." SAC ¶¶ 111-118; 171-181. Finally, despite acknowledging that VEL is a foreign, independent corporation owned by its foreign member banks, SAC ¶ 33, Plaintiffs allege that the geographic market for all relevant product markets was the United States. SAC ¶ 125.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST VISA EUROPE

### A.    Plaintiffs Fail to Plead Facts That Plausibly Show Visa Europe Participated In The Alleged Misconduct

To avoid dismissal on a Rule 12(b)(6) motion, Plaintiffs must plead "sufficient factual matter" to state a claim that is at least "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 565 (2007). A claim is facially plausible when the pleaded factual content is not merely consistent with a possibility that the defendant acted wrongly, but instead allows "the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plaintiffs alleging an antitrust conspiracy must allege facts that provide plausible grounds from which to infer that an unlawful agreement was made. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (noting that Twombly's pleading requirements apply both to Section 1 and Section 2 conspiracy claims); see H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc., 672 F. Supp. 724, 743 (S.D.N.Y. 1987) (the existence of a conspiracy is a threshold issue for both Section 1 and Section 2 conspiracy claims), aff'd, 879 F.2d 1005, 1018 (2d Cir. 1989). While this Court must accept well-pleaded

6

allegations as true, conclusory allegations are not entitled to the presumption of truth and need not be considered. Iqbal at 678-79. Nor should the Court accept allegations contradicted by documents referenced in the complaint or integral to the allegations contained therein, or in publicly filed documents of which it may take judicial notice. See Cortec Indus., Inc., 949 F.2d at 48 (on a motion to dismiss, district court may consider documents of which the plaintiffs had notice were integral to their claim, even if those documents were not incorporated into the complaint by reference).

The single allegation of specific conduct attributable to Visa Europe is that it "agreed to" anticompetitive Interchange Fees incurred in the United States when "holders of cards issued by Visa Europe member banks" used their Visa cards in the United States. SAC ¶ 39. However, this allegation is not just blatantly conclusory; it is directly contrary to the relevant provisions of the Framework Agreement, which prohibit Visa Europe from "set[ting] Interchange Rates or the rules for setting such rates" for transactions made by holders of cards issued by Visa Europe's member banks made outside of Europe. See F.A. Schedule 1 ¶ 33.3l; supra at 4-5. Furthermore, Plaintiffs do not allege that the Framework Agreement violates antitrust laws, or that Visa Europe was involved in Visa Inc.'s setting of Interchange Fees charged in the United States, including fees charged to merchants for transactions with European cardholders when they are traveling in the country. Thus, there are no allegations from which to infer that Visa Europe should be subject to antitrust liability by virtue of its contractual relationship with Visa Inc.[10] See Iqbal, 556 U.S. at 678; RxUSA Wholesale, Inc. v. Alcon Labs, Inc., 661 F. Supp. 2d 218, 230-31 (E.D.N.Y. 2009), aff'd sub nom., 391 F. App'x 59 (2d Cir. 2010) (conclusory allegations such as

---

[10] Indeed, the Eleventh Circuit has held that an interchange fee is not a naked restraint of trade and is therefore not *per se* price fixing proscribed by Section 1 of the Sherman Act. Nat'l Bancard Corp. (NaBanco) v. VISA U.S.A., Inc., 779 F.2d 592, 604-05 (11th Cir. 1986) (upholding lower court's decision finding that under a "rule of reason" analysis the interchange fee at issue was "necessary to offer the VISA card" and was on balance procompetitive).

that defendants "agreed with each other" are insufficient to state a claim); Arnold Chevrolet LLC

v. Tribune Co., 418 F. Supp. 2d 172, 178 (E.D.N.Y. 2006) (dismissing Plaintiffs' antitrust claims

because "there [were] no allegations in the Amended Complaint that even suggest that the

[parent] was involved in the [subsidiary's] actions in any way").

      Moreover, the SAC is devoid of any factual allegations explaining how Visa Europe was

"a direct participant in" the alleged conspiracy between Visa Inc. and "some of the nation's

largest banks." See SAC ¶¶ 39, 1. The SAC does not contain a single allegation of interaction

between Visa Europe and the U.S. banks alleged to be *Visa Inc.'s* board members, owners,

and/or members. See SAC ¶¶ 1, 59. Nor does the SAC in any way tie Visa Europe to any of the

alleged horizontal or vertical agreements between Visa Inc. and those banks.[11] See Kendall v.

Visa U.S.A., Inc., 518 F.3d 1042, 1048 (9th Cir. 2008) (noting that the allegation that defendants

"knowingly, intentionally and actively participated in an individual capacity in the alleged

scheme" to fix interchange rates is "nothing more than a conclusory statement" and without facts

to support such a conclusion is insufficient to state a claim). Indeed, the SAC does not include a

single non-conclusory allegation of any Visa Europe conduct whatsoever. See Jung v. Ass'n of

Am. Med. Colls., 300 F. Supp. 2d 119, 157 (D.D.C. 2004) ("Conclusory allegations, in a

complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing

expedition.") (citation omitted).

      Visa Europe's contractual relationship with Visa Inc., coupled only with generic

allegations of conduct by "Visa" or "defendants," does not support the inference that Visa

Europe was aware of, let alone joined in, the alleged conspiracy. See, e.g., Precision Assocs.,

Inc. v. Panalpina World Transp. (Holding) Ltd., No. 08-CV-00042 (JG) (VVP), 2011 WL

---

[11]    Furthermore, none of the instances Plaintiffs cites as establishing, for example, "Visa's" "market power"
and "anti-competitive conduct," in fact involves Visa Europe in any way. See SAC ¶¶ 64-66, 76, 80-89.
111-118.

8

7053807, at *13-20 (E.D.N.Y. Jan. 4, 2011), adopted by No. 08-CV-00042 (JG) (VVP), 2012 WL 3307486, at *14-15 (E.D.N.Y. Aug. 13, 2012) (noting that there was no support for the conclusion that a corporate affiliate was aware of and joined a conspiracy "simply by virtue of its participation" in the sale of services that were subject to an alleged conspiratorial surcharge, and that the plaintiffs failed to provide any facts showing knowing assent or approval of an alleged conspiratorial surcharge, or direct or independent participation by the grouped defendants). Thus, Plaintiffs fail to plead facts from which this Court reasonably may infer that Visa Europe should be held liable for the conspiracy alleged in the complaint. See Iqbal, 556 U.S. at 679 (facts alleging the "mere possibility of misconduct" are insufficient); RxUSA Wholesale, Inc., 661 F. Supp. 2d at 229-31 (plaintiffs' allegations of agreements made at an unspecified time and place, parallel conduct, and anticompetitive motive failed to allege plausible grounds to infer an agreement). Consequently, the SAC should be dismissed in its entirety as to Visa Europe for failure to state any cognizable antitrust claim.

### B.    Plaintiffs' Group Pleading Allegations Are Facially Deficient

Absent plausible non-conclusory allegations, a defendant lacks adequate notice of the alleged conduct giving rise to the claims against it. Twombly, 550 U.S. at 566-67 (antitrust complaint dismissed where it failed to identify alleged conduct of each defendant giving rise to claims); Iqbal, 556 U.S. at 683 (court must determine adequacy of factual allegations on a defendant-by-defendant basis). Therefore, Rule 8(a) requires plaintiffs to provide each defendant with notice allowing it to identify the nature of the claims against it, the grounds on which the claim rests, and the relief sought. Twombly, 500 U.S. at 555 n. 3, 574.

Without specific factual allegations as to how a particular defendant individually joined or participated in wrongful conduct, group pleading fails Rule 8. See Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each

9

claim and providing no factual basis to distinguish their conduct, [the] complaint failed to satisfy [Rule 8(a)'s minimum standard]"); Jung, 300 F. Supp. 2d at 125 (dismissing antitrust complaint for failing to state a claim and finding that generic allegations against "defendants" referring to "multiple defendants situated very differently from one another" were insufficient to demonstrate participation in the alleged conspiracy); In re Elec. Carbon Prods. Antitrust Litig., 333 F. Supp. 2d 303, 312 (D. N.J. 2004 ) ("simply using the 'global term "defendants" to apply to numerous parties without any specific allegations' that would tie each particular defendant to the conspiracy is not sufficient"). Indeed, this Court has rejected the precise "corporate grouping" technique that Plaintiffs employ here. In Precision Associates, an antitrust class action, plaintiffs similarly defined distinct corporate defendants as a single entity and referred to them in subsequent allegations using only the generic definition. 2011 WL 7053807, at *13-20. This Court held that the complaint failed Rule 8(a)'s basic pleading requirement because a complaint that names multiple defendants must "'indicate clearly the defendants against whom relief is sought, and the basis upon which relief is sought against the particular defendants.'" Id. at *14 (citations omitted).

Here, Plaintiffs group together five distinct corporate entities—Visa Inc., Visa U.S.A. Inc., Visa International, VEL, and VESI—and define them as the generic "Visa" for pleading purposes. SAC ¶ 51. And even though Visa Europe's Motion to Dismiss raised this very same problem with the FAC, Plaintiffs continue to assert allegations and claims against the fabricated "Visa" as if all five of these corporations amount to a single defendant.[12] As is clear from

---

[12] Plaintiffs provide no indication of what basis there may be for grouping Visa Europe with the other Visa defendants throughout the SAC. As shown above, the allegation that the Framework Agreement gives Visa Inc. the ability to control Visa Europe is directly contrary to the language of that agreement. See supra at 4 n 8.And even if the incorrect assertion that Visa Europe holds an 11.7% equity ownership interest in Visa Inc. were true, SAC ¶¶ 45, 48, that would not be sufficient to plead a conspiracy to restrain trade. See Nat'l ATM Council, Inc. v. Visa Inc., 922 F. Supp. 2d 73, 93 (D.D.C. 2013) (allegations that defendant banks have an equity interest in and hold seats on the boards insufficient to support a conclusions that defendants

10

Precision Associates and numerous similar cases, this group pleading technique fails to satisfy Rule 8's notice requirement. This is true as a general matter, but even more so where VEL and VESI have no corporate affiliation with Visa Inc., Visa U.S.A. Inc. and Visa International, but instead are mere licensees of the "Visa" brand. See supra at 3-5. The SAC as pleaded cannot be sustained against Visa Europe, and should be dismissed for failure to state a claim.

### C.   Plaintiffs' Section 2 Claims Should Be Dismissed For Failure to Plead Visa Europe's U.S. Market Power

In addition to and independent of the reasons for dismissal set forth above, because Plaintiffs have not and cannot plead that Visa Europe has the relevant market power in the United States, Plaintiffs fail to state a claim against Visa Europe under Section 2 of the Sherman Act. See SAC §§ 166-181. In order to state a valid claim for monopolization under Section 2, a plaintiff must "allege as a threshold requirement that the defendant enjoys monopoly power in the relevant market." RxUSA Wholesale, Inc., 661 F. Supp. 2d at 234; see PepsiCo, Inc. v Coca Cola Co., 315 F.3d 101, 107 (2d Cir. 2002) (the "core element" of a monopolization claim is market power). Section 2 monopolization claims may not be based on a "shared" monopoly theory of liability. H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc., 879 F.2d 1005, 1018 (2d Cir. 1989) (market shares cannot be aggregated to establish a Section 2 violation); RxUSA Wholesale, Inc., 661 F. Supp. at 235 (dismissing Section 2 monopolization claims for failure to allege individual market share of each defendant; "The Second Circuit has specifically rejected monopolization claims under Section 2 based on a shared monopoly theory of liability.").

---

are engaged in a horizontal conspiracy to restrain trade); see also Kendall, 518 F.3d at 1048 (belonging to an association or being on a board of directors of a network does not establish horizontal agreement).

Here, while Plaintiffs allege that the "relevant geographic market" is the United States, SAC ¶ 125, they do not allege that VEL or VESI has any significant U.S. market share. Because it is "axiomatic that a firm cannot monopolize a market in which it does not compete," and there are no allegations in the SAC that Visa Europe "has any presence whatsoever in any of the alleged markets, much less any allegation that they possess monopoly power in those markets," Plaintiffs fail to state Section 2 monopolization claims against Visa Europe. RxUSA Wholesale, 661 F. Supp. 2d at 228. Further, Plaintiffs cannot aggregate all five Visa defendants' market shares to meets its threshold pleading burden. Id. at 235; H.L. Hayden Co. of New York, 879 F.2d at 1018.

Therefore, and in addition to the reasons for dismissal set forth in in section I(A) and (B) above, this Court should dismiss SAC Claims 5-7 against VEL and VESI.

## II.   VEL IS NOT SUBJECT TO PERSONAL JURISDICTION IN THIS COURT

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Plaintiffs bear the burden of demonstrating that the Court may exercise personal jurisdiction over each defendant. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). To overcome the motion, Plaintiffs must plausibly allege, and ultimately prove, facts that demonstrate either that: (i) VEL has such a substantial, continuous, and systematic course of business in the forum that it is "at home" there (i.e., general jurisdiction); or (ii) Plaintiffs' claim arises out of VEL's minimum contacts with the forum (i.e., specific jurisdiction). Sonera Holding B.V. v. Çukurova Holding A.S., 750 F.3d 221, 225 (2d Cir. 2014), cert. denied, 134 S. Ct. 2888 (June 30, 2014). Conclusory, non-fact-specific jurisdictional allegations cannot establish even a prima facie basis of personal jurisdiction. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185-86 (2d Cir. 1998). The forum state's law—here, New York's—generally determines the bounds of personal jurisdiction. Daimler A.G. v. Bauman, 134 S. Ct. 746, 753 (2014) (citing Fed. R. Civ. P.

12

4(k)(1)(A) (personal jurisdiction is proper over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located")). However, even if there is a predicate basis of jurisdiction, courts only may exercise personal jurisdiction when doing so does not offend "traditional notions of fair play and substantial justice." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2853 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Because Plaintiffs' jurisdictional allegations are either conclusory, meritless, or irrelevant to establishing this Court's personal jurisdiction over VEL, this Court should grant VEL's 12(b)(2) motion to dismiss. See Metro. Life, 84 F.3d at 566 (citing Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F. 2d 194, 197 (2d Cir. 1990) (plaintiff only can defeat a motion to dismiss with legally sufficient allegations of jurisdiction)).

### A. VEL, A U.K. Corporation With Its Principal Place Of Business In The U.K., Is Not Subject To New York's General Jurisdiction

The paradigmatic bases of general jurisdiction are the place of incorporation and the principal place of business because each "ordinarily indicates only one place" and is "easily ascertainable." Daimler, 134 S. Ct. at 760. As both the Supreme Court and Second Circuit recently clarified, a foreign corporation, like VEL, is only subject to New York's general jurisdiction if its contacts with the state are so "'continuous and systematic' as to render [it] essentially at home in the forum." Sonera, 750 F.3d at 225 (citing Goodyear, 131 S. Ct. at 2851); Daimler, 134 S. Ct. at 760 ("at home" requirement reflects that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there"). Standing alone, doing business in New York will not subject a foreign corporation to a forum's general jurisdiction. See, e.g., Daimler, 1134 S. Ct. at 762 n. 20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

13

While Plaintiffs confirm that VEL is incorporated and has its principal place of business in the United Kingdom, is an association composed only of European banks, and is owned by those banks,[13] SAC ¶ 33, they assert that VEL is subject to New York's general jurisdiction because it "conduct[s] continuous and systematic business in New York pursuant to N.Y. C.P.L.R. § 301." SAC ¶ 11. While, as VEL demonstrated in its initial Motion to Dismiss, this "doing business" test is likely no longer valid,[14] in fact Plaintiffs do not allege a single act VEL performed in New York, let alone that VEL conducts business here. Instead, Plaintiffs allege that European cardholders—*i.e.*, VEL's members' customers—made purchases in the United States that caused Interchange Fees to be incurred in the United States. See SAC ¶¶ 36, 38-40. But even when considered with the unspecified "effects" of Visa Europe's unidentified "rules," this activity—two steps removed from VEL—does not establish a prima facie basis of this Court's general jurisdiction over VEL, let alone satisfy Daimler's and Sonera's requirement that a

---

[13]     See also Stokes Decl. ¶¶ 5,6.

[14]     While the New York Court of Appeals has not yet issued a ruling on the issue, it is unlikely that C.P.L.R. § 301's "doing business" standard will survive after Daimler's holding that a court may only exercise general jurisdiction over a foreign corporation that is essentially "at home" in the forum. See, e.g., Sonera, 750 F.3d 225, at n. 2 ("[W]e note some tension between Daimler's 'at home' requirement and New York's 'doing business' test for corporate 'presence,' which subjects a corporation to general jurisdiction if it does business there 'not occasionally or casually, but with a fair measure of permanence and continuity' [ . . . ] Daimler's gloss on due process may lead New York courts to revisit Judge Cardozo's well-known and oft-repeated jurisdictional incantation"); Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014) (finding that after Daimler, there is no general jurisdiction over a nonparty bank with branches in New York, significant global presence (maintaining four branches in the United States) but only a portion of the Bank's worldwide activity takes place in New York, because it is "clearly not an exceptional case where the Banks' contacts are so continuous and systematic as to render it essentially at home in the forum") (internal quotation omitted); Deutsche Zentral-Genossenschaftsbank A.G. v. UBS A.G., No. 652575/2012, 2014 WL 1495632, at *4 (N.Y. Sup. Apr. 17, 2014) ("Daimler significantly narrows the parameters for the exercise of general personal jurisdiction, and calls into question the validity of the doing business doctrine and, arguably also, the mere department doctrine."). Indeed, the one New York state decision we have found that specifically turns on the issue relied on Daimler to reject "doing business" arguments for personal jurisdiction. See Chambers v. Weinstein, No. 157781/2013, 2014 WL 4276910, at *16 (N.Y. Sup. Ct. Aug. 22, 2014) ("Based on the Supreme Court's holding in Daimler, this court lacks general jurisdiction over [the "doing business" defendants].").

corporation be "at home" in New York to be subject to its general jurisdiction, because VEL in

fact does no business in New York:

- VEL has no physical presence, nor leases nor owns any real estate in New York or anywhere else in the United States, Stokes Decl. ¶ 9;

- VEL has no offices, employees, or representatives in New York or anywhere else in the U.S., Id.;

- VEL does not manufacture, distribute, or sell products, or offer or provide services to customers, in New York or anywhere else in the U.S., Id.;

- VEL does not advertise or otherwise solicit business in New York or anywhere else in the U.S., Id.;

- VEL delivers payment services only to European member institutions, Id. ¶ 6; and

- VEL crafts and imposes rules only with and upon VEL's European member institutions, Id. ¶ 8.

See, e.g., Sonera, 750 F.3d at 226 (holding that defendant was not subject to general jurisdiction

in New York where it was a foreign company "with operations, properties and assets

predominantly located [abroad]," and noting that even a company's "engage[ment] in a

substantial, continuous and systemic course of business" alone is insufficient to render it at home

in the forum); A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines, 828 F. Supp. 2d 557, 563-64

(E.D.N.Y. 2011) (finding no general jurisdiction under C.P.L.R. § 301 where defendant asserted

that, among other things, it did not maintain an office, solicit business, maintain bank accounts or

other property in New York and plaintiffs did not allege any facts to the contrary).[15]

## B.   Plaintiffs Provide No Basis To Exercise Specific Jurisdiction Over VEL

Despite their inability to name a single act VEL performed in New York, let alone one

that gave rise to the instant claim, Plaintiffs allege that VEL "transacts business within New

York pursuant to N.Y. C.P.L.R. § 302(a)[(1)]." SAC ¶ 11; see also N.Y. C.P.L.R. § 302(a)(1)

---

[15]   Moreover, Plaintiffs in the SAC do not even attempt to address VEL's showing in its Motion to Dismiss that VEL in fact does not do business in New York.

(McKinney 2008). A court may exercise Section 302(a)(1) jurisdiction only if the plaintiff alleges facts that show: (i) the non-domiciliary "transacts business" within New York; and (ii) the claim in question arises out of that particular business activity. A.W.L.I. Grp., Inc., 828 F. Supp. 2d at 564; Virgin Enters. Ltd. v. Virgin Eyes LAC, No. 08-CV-08564 (LAP), 2009 WL 3241529, at *3 (S.D.N.Y. Sept. 30, 2009) ("[A]n 'articulable nexus between the business transacted and the cause of action sued upon' is essential") (citing McGowan v. Smith, 52 N.Y.2d 268, 272 (1981)). Without more, the conclusory allegation that a defendant "transacted business" in New York "cannot suffice to establish personal jurisdiction under § 302(a)(1)." Virgin Enters., 2009 WL 3241529, at *3 (citing Liaros v. Vaillant, No. 93-CV-02370, 1996 WL 88559, at *5 (S.D.N.Y. Mar.1, 1996)).

Here, Plaintiffs' "unsubstantiated assertion" that VEL generally "transacts business" in New York—devoid of any specific conduct, let alone an "articulable nexus" between that conduct and Plaintiffs' cause of action—"fail[s] to meet even the minimal prima facie showing required to establish personal jurisdiction under § 302(a)(1)." Virgin Enters., 2009 WL 3241529, at *3; see also, e.g., Ferrante Equip. Co. v. Lasker-Goldman Corp., 26 N.Y. 2d 280, 284-85 (1970) (affirming dismissal where plaintiff-appellant was "unable to point to a single transaction of business by respondent in New York"). Furthermore, the "unilateral acts of others"—here, Visa Europe's members' cardholders' acts—are not acts committed by VEL, let alone acts sufficient to confer long-arm jurisdiction. See Ferrante, 26 N.Y. 2d at 285 (others' in-state subcontract performance does not subject a nondomiciliary defendant to jurisdiction under New York's long-arm statute). Finally, the assertion that Visa Europe profited from fees incurred by the use of credit cards issued by Visa Europe member banks in the U.S., see SAC ¶¶ 38-40, does not satisfy New York's "articulable nexus" requirement. See Ehrenfeld v. Bin Mahfouz, 9

16

N.Y.3d 501, 511 (2007) ("[T]he mere receipt by a nonresident of a benefit or profit performed by others in New York is clearly not an act by the recipient in this State sufficient to confer jurisdiction under [C.P.L.R. § 302(a)(1)].") (citation omitted).

The SAC's only non-conclusory allegation tying VEL to New York—that the Framework Agreement between VEL and Visa Inc. contains a New York forum selection clause, SAC ¶ 12—also does not confer long-arm jurisdiction here. As a general rule, only parties in privity of contract may enforce its terms, such as a forum selection clause found within the agreement. Bernstein v. Wysoki, 907 N.Y.S.2d 49, 56 (App. Div. 2010) (citing Freeford Ltd. v. Pendleton, 857 N.Y.S.2d 62, 67-69 (App. Div. 2008)). A non-party only may invoke a forum selection clause if it is: (i) the third-party beneficiary of the agreement; (ii) a party to a "global transaction" that is not a signatory to that particular agreement within the transaction; or (iii) so "closely related" to a signatory that enforcement by the non-party is foreseeable. Bernstein, 907 N.Y.S.2d at 56-57. None of these grounds is pled by Plaintiffs, or applicable here.[16] Thus, the forum selection clause in the Framework Agreement for disputes between Visa Inc. and VEL does not confer personal jurisdiction over VEL in this case. See Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc., No. 00-CV-00201 (JSM), 2001 WL 1041990, at *5 (S.D.N.Y. Sept. 7, 2001) (holding that Section 302(a)(1) did not provide jurisdiction because "[d]efendant's contract with [third party] contains a New York forum selection clause does not affect its consent to suit for claims unrelated to" the contract with the third party).[17]

---

[16]    The Framework Agreement even explicitly provides that third parties have no legal or equitable rights under the contract. F.A. Schedule 1 ¶ 32.

[17]    VEL demonstrated in its initial Motion to Dismiss that it is not subject to personal jurisdiction under the extraterritorial tort provisions of N.Y. C.P.L.R. § 302(a)(3), and Plaintiffs have not asserted that basis for jurisdiction in the SAC.

17

Finally, although Plaintiffs allege that Federal Rule of Civil Procedure 4(k)(1) provides independent grounds for this Court to exercise personal jurisdiction over VEL, this reliance is misplaced. Rule 4(k)(1) simply instructs federal courts to follow state law to determine the bounds of their personal jurisdiction. See, e.g., Daimler, 134 S.Ct. at 753 (citing Fed R. Civ. P. 4(k)(1)). Because New York law provides no basis for exercising personal jurisdiction over VEL, Rule 4(k)(1) does not, either.

### C.   Exercising Jurisdiction Over VEL Would Violate Due Process

Because New York law provides no grounds for personal jurisdiction over VEL, the Court need not analyze VEL's Due Process rights. A.W.L.I. Grp., 828 F. Supp. 2d at 574. But even if Plaintiffs had alleged any relevant grounds, Due Process prohibits exercising jurisdiction over VEL. To satisfy Due Process, this Court first must analyze whether Plaintiffs have shown VEL has minimum contacts with the forum, and if so then consider whether exercising jurisdiction over VEL would be reasonable. Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 731 (S.D.N.Y. 2010). To establish minimum contacts, a plaintiff must allege jurisdictional facts showing that defendants reasonably could foresee themselves being haled into the forum because they "purposefully directed" activities either at the forum (general jurisdiction), or at forum residents and the litigation results out of alleged injuries related to those activities (specific jurisdiction). Metro. Life, 84 F.3d at 567-68. If a plaintiff satisfies this threshold burden of alleging minimum contacts, the Second Circuit applies a "sliding scale" to determine whether exercising jurisdiction is constitutionally "reasonable" under the circumstances of the particular case. Metro. Life, 84 F.3d at 569. Thus, the weaker the showing of minimum contacts, the more vigorously a plaintiff must demonstrate reasonableness. See id.

Here, Plaintiffs have failed to meet their threshold burden of establishing minimum contacts.  As discussed *supra* in Section II(A), VEL has not purposely injected itself into either

18

this forum or into the United States as a whole. See Metro. Life, 84 F.3d at 568 (citing Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty., 480 U.S. 102, 112-14 (1987)). Plaintiffs have not alleged, and VEL does not perform, any acts in New York or the United States, nor does VEL target the New York or American market. Cf. A.W.L.I. Grp., Inc., 828 F. Supp. 2d at 566 (alleged business activity that "equally targets New York consumers and all other consumers throughout the world" "by definition" does not directly solicit New Yorkers). Thus, because Plaintiffs have not alleged minimum contacts, this Court need not consider reasonableness. Metro. Life, 84 F.3d at 568 ("[I]f the constitutionally necessary first-tier minimum is lacking, the inquiry ends.").

However, even if the Court were to reach the second stage of the Due Process analysis, a finding of unreasonableness is compelled here. Plaintiffs are unable to allege a single act of Visa Europe in the United States, let alone any viable reason for haling into a U.S. court a U.K.-incorporated and Europe-focused business that conducts no activity in, and invokes no attendant privileges of, the U.S. Cf. Metro Life, 84 F.3d at 575 (noting that plaintiffs had "not suggested, much less shown, any substantive social policies that would be furthered" by exercising jurisdiction); Gmurzynska v. Hutton, 257 F. Supp. 2d 621, 628 (S.D.N.Y. 2003) (in holding that the reasonableness test had not been met, noting that witnesses and evidence were likely to be located in foreign jurisdiction and that the foreign jurisdiction "unquestionably has a strong interest in enforcing its own business competition laws with respect to tortious acts allegedly committed in its own country by its own residents"). Plaintiffs simply cannot demonstrate  a "strong[ ] showing of reasonableness" to overcome their "weak showing of minimum contacts," see Gmurzynska, 257 F. Supp. 2d at 628, and therefore exercising personal jurisdiction over VEL would violate notions of "fair play and substantial justice" and would be unconstitutionally

19

unreasonable. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (quoting Int'l

Shoe, 326 U.S. at 320).

Because the Due Process Clause prohibits exercising personal jurisdiction over VEL, this

Court should grant VEL's 12(b)(2) Motion to Dismiss.

## III.   PLAINTIFFS' ALLEGATIONS DO NOT MEET THE REQUIREMENTS OF THE FTAIA

As the Supreme Court has made clear, the FTAIA limits the Sherman Act's reach to

claims involving: (i) purely domestic commerce, (ii) import commerce, and/or (iii) conduct that

(a) has a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce and (b)

whose effect "gives rise" to the plaintiff's Sherman Act claim. See 15 U.S.C. § 6(a);[18] F.

Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 162 (2004). In considering a motion

to dismiss on FTAIA grounds, a court reviews whether the face of the complaint alleges facts

sufficient to state a claim that is not removed from the Sherman Act's scope by the FTAIA. See

Precision Assocs., 2011 WL 7053807, at *33 (citing Poodry v. Tonawanda Band of Seneca

Indians, 85 F.3d 874, 887 n.15 (2d Cir. 1996)). While the Second Circuit recently ruled that the

FTAIA's limitations on antitrust claims are substantive rather than jurisdictional, Lotes Co., Ltd.

v. Hon Hai Precision Industry. Co., 753 F.3d 395, 405 (2d Cir. 2014), this does not eliminate

Plaintiffs' burden to plead allegations that state a plausible claim for relief under the Sherman

Act, as required by Twombly and Iqbal.

Because foreign conduct is the only conduct in which Visa Europe engages, Plaintiffs do

not allege, and there can be no argument, that the claims against Visa Europe arise out of its

---

[18]    The statute provides: "Sections 1 through 7 [of the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—(1) such conduct has a direct, substantial, and reasonably foreseeable effect—(A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and (2) such effect gives rise to a claim under the provisions of Sections 1 through 7."

domestic commerce. Consequently, in order to state a claim against Visa Europe that is not

foreclosed by the FTAIA, Plaintiffs must allege either that their claims arise from Visa Europe's

conduct involving import commerce or from its foreign conduct that has a "direct, substantial

and reasonably foreseeable" effect on U.S. commerce that gives rise to Plaintiffs' Sherman Act

claims. Plaintiffs do neither in the SAC.

### A.       The "Import Commerce" Exception Does Not Apply

As an initial matter, the FTAIA's import commerce exception does not apply to

Plaintiffs' claims against Visa Europe because Plaintiffs never allege that Visa Europe engages

in import commerce, and instead rely on the "domestic effects" exception, discussed below.

Indeed, Plaintiffs could not allege that Visa Europe engages in import commerce as defined by

the FTAIA. This exception is narrow, and turns on whether the defendants' conduct involves

import trade or commerce. Kruman v. Christie's Int'l PLC, 284 F.3d 384, 394 (2d Cir. 2002),

abrogated on other grounds, Empagran, 542 U.S. at 155 (Sherman Act applies to foreign conduct

only if it is intended to and does in fact produce "some substantial effect" in the United States).

Conduct with an incidental effect on U.S. imports is not enough. See Precision Assocs., 2011

WL 7053807, at *36 (distinguishing activity that is not "import trade or import commerce"

where the defendants' commercial activity was not directed at the U.S., concerned import

commerce in only "the most attenuated manner" and where the goods or services at issue " may

or may not have entered the U.S."). Plaintiffs do not, and could not, plausibly allege that Visa

Europe imports any products into, or sells any services in, the United States.

### B.       The "Domestic Effects" Exception Does Not Apply

Plaintiffs also fail to plausibly allege that Visa Europe's conduct in Europe meets the

"domestic effects" test: that Visa Europe's foreign conduct has a direct, substantial, and

reasonably foreseeable effect in the U.S. that gives rise to Plaintiffs' antitrust claims. See 15 U.S.C. § 6(a)(1)(A); Empagran, 542 U.S. at 161-62.

The Second Circuit recently clarified that to show a "direct, substantial and reasonably foreseeable" effect, Plaintiffs must plausibly allege a "reasonably proximate causal nexus" between the foreign conduct and the alleged effect on domestic commerce. See Lotes, 753 F.3d at 412-13. The court explained that the "reasonably proximate causal nexus" standard excludes "remote injuries:" injuries with superseding causes, injuries outside the scope of risk created by defendants' conduct, and injuries that are not a natural or probable consequence of defendants' conduct. See id. at 412. Thus, Lotes is consistent with prior decisions finding that indirect or speculative effects of foreign conduct in the United States are insufficient to meet the domestic effects exception. See Sniado v. Bank Austria A.G., 174 F. Supp. 2d 159, 164 (S.D.N.Y. 2001), aff'd, 378 F.3d 210, 213 (2d Cir. 2004) (overcharge for services performed abroad is not a "domestic effect," even if injuries are suffered by an American); In re Intel Corp. Microprocessor Antitrust Litig., 452 F. Supp. 2d 555, 561 (D. Del. 2006) (alleged domestic effects are not direct when they are premised on speculative and changing factors; "ripple effects" in the United States are insufficient).

Plaintiffs attempt to plead that the domestic effects exception should apply here, alleging that: (i) "[t]he conduct of Visa Europe has a direct, substantial and reasonably foreseeable effect on American domestic commerce" that violates the Sherman Act and has caused injury to Plaintiffs, SAC ¶ 49; and (ii) VEL and VESI "are sued due to the effects of their rules on Interchange Fees charged and paid in the United States." SAC ¶ 36. However, as discussed *supra* at 7-9, the SAC's sole allegation of actual conduct by Visa Europe is that Visa Europe "agreed to" Interchange Fees set by Visa Inc., which were incurred when holders of cards issued by Visa

22

Europe member banks made purchases in the U.S. SAC ¶ 39. Further, Plaintiffs do not identify

any specific rules of either VEL or VESI that have any purported "effects" on domestic

commerce, or whether such effects are direct, substantial, and reasonably foreseeable enough to

satisfy the FTAIA's requirements. See Empagran, 542 U.S. at 161.[19]

These vague and conclusory allegations are insufficient to demonstrate that Plaintiffs'

claims against Visa Europe fall within the "domestic effects" exception to the FTAIA. Plaintiffs

acknowledge that Interchange Fees incurred in the United States are set by Visa Inc. See SAC ¶

39. Plaintiffs also allege that the purportedly anti-competitive Interchange Fees incurred in the

United States are the result of a conspiracy between Visa Inc. and its former member (now

customer) banks. See, e.g., SAC ¶¶ 1, 59, 62, 68. The Framework Agreement establishes that

Visa Europe's activities are confined to Europe and makes clear that Visa Europe may not set

Interchange Rates or the rules for setting such rates in respect of United States or international

transactions. Thus, without any specific allegations of conduct by Visa Europe in furtherance of

the alleged conspiracy, Plaintiffs' conclusory allegation that Visa Europe "agreed to"

Interchange Fees provides no clue as to what causal nexus, if any, might exist between Visa

Europe's wholly European activity and the alleged conspiracy between Visa Inc. and banks in

the United States, let alone that such a nexus qualifies as "reasonably proximate."[20] See Lotes,

753 F.3d at 398; see also Kruman, 284 F.3d at 398 (noting that "'conduct' only refers to acts that

are illegal under the Sherman Act"). In addition, Plaintiffs' allegation that Visa Europe's

---

[19]    While Plaintiffs make numerous general references to various "Visa" rules, the only rules that Plaintiffs
        identify are Visa U.S.A. Inc. Operating Regulations, Volume 1 – General Rules (Nov. 15, 2008) and Visa
        International Operating Regulations (October 15, 2010)—never any Visa Europe rules. See SAC ¶¶ 73, 75,
        109. Nor do Plaintiffs allege that the "set of operating rules" agreed between Visa Europe and Visa Inc. in
        any way relate to the setting of Interchange Fees.  See SAC ¶ 42.

[20]    Indeed, because the SAC does not allege that the Framework Agreement itself is anticompetitive, the
        alleged conspiracy between Visa Inc. and the banks would be a superseding or intervening cause of the
        alleged harm to Plaintiffs. See Lotes, 753 F.3d at 412.

"rules"—rules that necessarily are crafted and imposed within only Europe and upon only Visa Europe's European member institutions—somehow affect "Interchange Fees charged and paid in the United States," SAC ¶ 36, does not meet the "reasonably proximate causal nexus" standard for domestic effects articulated in Lotes. 753 F.3d at 398; see also Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 305 (3d Cir. 2002) (it is "well established" that the Sherman Act applies to foreign conduct "that was meant to produce and did in fact produce some substantial effect in the United States") (citation omitted). Plaintiffs are required to state such allegations with adequate specificity to demonstrate that their claims are not removed from the Sherman Act's reach by the FTAIA. Plaintiffs have not done so. Consequently, their claims should be dismissed.

## IV.   PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

A private antitrust action must be brought within four years of its accrual. See 15 U.S.C. § 15b. Neither VEL nor VESI was named as a defendant in this action until June 13, 2014. Plaintiffs do not and cannot allege fraudulent concealment, relation back, or class action tolling to extend the limitations period. Therefore, the statute of limitations bars all claims brought against Visa Europe for pre-June 13, 2010 conduct.

Plaintiffs do not and cannot allege any reason to extend the statutory period. Plaintiffs cannot allege that Visa Europe concealed the alleged antitrust violation's existence or that Plaintiffs were ignorant of the alleged violations: discovery in this class action began in 2005 and the instant allegations comprise an "offshoot" of a settlement of which this Court approved in 2003. See In re Payment Card, 986 F. Supp. 2d 207; see also In re Visa Check/MasterMoney, 297 F. Supp. 2d 503 (E.D.N.Y. 2003). Furthermore, the relation-back doctrine is inapplicable because Plaintiffs cannot claim they failed to name VEL or VESI due to any mistake regarding their proper identities. See Precision Assocs., 2011 WL 7053807, at *45-54. In addition, because

Visa Europe was not named as a defendant in the class action from which Wal-Mart opted out, class action tolling is inapplicable. See Arneil v. Ramsey, 550 F.2d 774, 782 n. 10 (2d Cir. 1977) (overruled on other grounds) (Suspending limitations period in favor of a party never before named as a defendant "would not comport with reason.").

Finally, although Visa Europe's initial Motion to Dismiss put Plaintiffs on notice of these deficiencies, the SAC does not add a single allegation of acts within, or reasons to toll, the statutory period, effectively conceding that their claims against Visa Europe arising before June 13, 2010 are time-barred.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against VEL and VESI should be dismissed in their entirety with prejudice. Because Plaintiffs have not and cannot allege any facts sufficient to support their claims against Visa Europe, this Court should deny leave to amend the complaint for a third time.

Dated:  New York, NY
        December 23, 2014

                    Respectfully submitted,

                    Linklaters LLP

                    By:  /s/ James R. Warnot, Jr.
                    James R. Warnot, Jr.
                    Elizabeth M. Dowd
                    1345 Avenue of the Americas
                    New York, NY 10105
                    (212) 903-9000
                    (212) 903-9100 (fax)

                    *Attorneys for Visa Europe Limited and Visa*
                    *Europe Services Inc.*

25